c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DON FRANK, *ET AL.*, Plaintiffs | CIVIL ACTION NO. 1:18-CV-00978 |
| VERSUS | JUDGE DRELL |
| KENNETH PARNELL, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Rule 12(b)(6) Motion to Dismiss and Request for Stay of Discovery (Doc. 7), filed by Defendant City of Marksville ("the City") and Officer Kenneth Parnell ("Parnell"). Plaintiffs Don Frank and Antonio Frank, individually and as the representatives of the estate of Armando Frank ("Armando") (collectively referred to as "Plaintiffs") oppose the motion (Doc. 12).

Because Plaintiffs fail to state plausible claims for relief against the City and Parnell, and because Plaintiffs seek to voluntarily dismiss their federal claims against the City and official capacity claims under 42 U.S. § 1983 against Parnell, the City's and Parnell's motion (Doc. 7) should be GRANTED IN PART. Because the City and Parnell are not entitled to discretionary immunity for negligent conduct at the operational level, and because the City can be vicariously liable under state law for the actions of its employees, the City's and Parnell's motion (Doc. 7) should be DENIED IN PART.

1

## I.    Background

 Plaintiffs filed this civil rights action under 42 U.S.C. § 1983, and supplemental wrongful death and survival action under Louisiana law.  (Doc. 1). Plaintiffs allege they are the rightful representatives of their brother, Armando, who died without descendants, a wife, or living parents. (Doc. 1).  Plaintiffs name as Defendants Deputy Spillman ("Spillman"), Deputy Alexander ("Alexander"), Avoyelles Parish Sheriff Doug Anderson ("Sheriff Anderson"), Parnell, and the City (collectively referred to as "Defendants").[1]  (Doc. 1).

Plaintiffs allege that on October 20, 2017, Armando drove his tractor to the Walmart parking lot in Marksville, Louisiana on a personal errand. (Doc. 1). Plaintiffs claim Armando was sitting on his tractor when he was approached by Parnell and Spillman about an outstanding arrest warrant they had been made aware of that day by a confidential informant. (Doc. 1).  Plaintiffs allege Alexander joined in the "detention." (Doc. 1).

Plaintiffs claim Armando asked to see the warrant and he was told he could see it at the station. (Doc. 1). Armando was ordered to surrender, and a verbal argument ensued over whether than was an arrest warrant. (Doc. 1). Plaintiffs assert the argument escalated into one of the officers climbing on the tractor, placing Armando in a "rear naked chokehold," and the other officers repeatedly tasering him. (Doc. 1).  Plaintiffs claim the officers then took Armando off the tractor and

---

[1] Plaintiffs do not assert whether the individual Defendants are being sued in both their official and individual capacities.  The City's and Parnell's motion objects to Plaintiffs' failure to adequately state a claim in both capacities and addresses allegations against Parnell in both his individual and official capacities. (Doc. 7-1).

compressed his chest into "positional asphyxia" by pinning him against the tractor, and subsequently against the ground and a police vehicle. (Doc. 1). Plaintiffs attach an autopsy report and assert the pathologist ruled the manner of death as a homicide. (Doc. 1). Plaintiffs claim no attempts were made to improve Armando's airway or given CPR until emergency medical services arrived. (Doc. 1).

Plaintiffs assert Alexander, Spillman, and Parnell used excessive force in the seizure of Armando by maliciously killing him in violation of the Fourth and Fourteenth Amendments to the Constitution. (Doc. 1). Plaintiffs claim Spillman and Alexander were acting under color of state law as Avoyelles Parish Sheriff's deputies. Plaintiffs contend Sheriff Anderson is liable for "all state law delicts and torts of his employees" committed in the course and scope of their employment. (Doc. 1). Plaintiff claim Sheriff Anderson is vicariously liable for the wrongful death and survival of Armando. (Doc. 1). Plaintiffs further claim Parnell, an employee of the City, is liable for the wrongful death and survival of Armando, as well as the lost chance of survival for failure to render CPR. (Doc. 1). Plaintiffs assert the City is vicariously liable for Parnell's "torts while in the course and scope of his duty during this wrongful death."

Plaintiffs Don and Antonio Frank seek damages for loss of love, affection, support, and enjoyment of life. (Doc. 1). Plaintiffs seek compensatory and punitive damages, costs, attorney's fees, and judicial interest. (Doc. 1).

Sheriff Anderson, Spillman, and Alexander answered the Complaint, asserting various affirmative defenses, including failure to state a claim for relief and failure to set forth federal subject matter jurisdiction. (Doc. 9). The City and Parnell filed a

3

Rule 12(b)(6) Motion to Dismiss (Doc. 7). The City and Parnell argue that Plaintiffs fail to state a claim against the City and Parnell, that the allegations of failure to render care are insufficient, and that the City and Parnell are entitled to qualified immunity. (Doc. 7-1). The City and Parnell also seek a stay of discovery during the pendency of this motion. (Doc. 7-1).

Plaintiffs oppose. (Doc. 12). However, as it pertains to the federal civil rights claims, Plaintiffs seek to voluntarily dismiss Sheriff Anderson in his official capacity as the employer of Spillman and Alexander, and to dismiss the City "in its official capacity as the employer of Officer Parnell for his [f]ederal claims." (Doc. 12). Plaintiffs also ask the Court to dismiss Parnell, Spillman, and Alexander, in their official capacities, but retain them in their individual capacities. (Doc. 12).

Additionally, as to Plaintiffs' state law claims of wrongful death and survival due to excessive force, Plaintiffs request the Court retain Sheriff Anderson in his official capacity, as the employer of Spillman and Alexander Daniels. (Doc. 12). Plaintiffs argue the City, as the employer of Parnell, is vicariously liable for Parnell's "state law delicts committed within the course and scope of his employment." (Doc. 12). Plaintiffs request Parnell, Spillman, and Alexander remain as defendants, in their individual capacities, as to Plaintiffs' state law claims. (Doc. 12). Alternatively, Plaintiffs request the Court grant leave to amend under Fed. R. Civ. P. 15(a) if it finds Plaintiffs fail to state a plausible claim for relief. (Doc. 12).

## II. Law and Analysis

### A. Standards governing the 12(b)(6) Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true," to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not equate to possibility or probability; it lies somewhere in between. Id. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See Twombly, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. Iqbal, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement, will not stand. Id. Similarly, where the well-pleaded facts do not

permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief.  Id. at 679.

In determining whether a complaint states a plausible claim for relief, a court draws on its judicial experience and common sense.  Id.  In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  Id.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Id.

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." Hernandez v. Ikon Ofc. Solutions, Inc., 306 Fed.Appx. 180, 182 (5th Cir. 2009); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).  However, that general rule does not apply if an amendment would be futile. Townsend v. BAC Home Loans Serv'g, L.P., 461 Fed.App'x. 367, 372 (5th Cir. 2011); Jaso v. The Coca Cola Co., 435 Fed.App'x. 346, 351–52 (5th Cir. 2011). Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000) (quotations and citations omitted); accord Fenghui Fan v. Brewer, 377 Fed.App'x. 366, 367 (5th Cir. 2010).  With respect to a statute of limitations defense, dismissal for failure to state a claim is proper when "it is evident from the pleadings that the action is barred, and the pleadings fail to raise

some basis for tolling." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003); accord Jaso, 435 F. App'x at 351-52.

    **B.**    **42 U.S.C. § 1983**

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity by the Constitution and laws of the United States.  42 U.S.C. § 1983.  Municipalities are "persons" within the meaning of § 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law.  Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922, 937 (1982).  Purely private conduct, no matter how wrongful, is not within the protective orbit of Section 1983.  Shelley v. Kraemer, 334 U.S. 1, 13 (1948).  Traditionally, "acting under color of state law requires that a defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  West v. Atkins, 487 U.S. 42, 49 (1988) (citing United States v. Classic, 313 U.S. 299, 326 (1941)).

    "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  Leffall v. Dallas Independent School District, 28 F.3d 521, 525 (5th Cir. 1994) (citations omitted).  The first inquiry is whether the plaintiff has alleged a violation

of a constitutional right at all.  Id.; see also Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995).

Under Monell, municipalities can be held liable for constitutional violations which arise from enforcement of the municipality's policies or procedures.  Monell, 436 U.S. 658.  Municipalities cannot, however, be liable under § 1983 for the constitutional torts of their employees under the doctrine of respondeat superior.  Id. at 691.  Thus, a "Monell claim" is a claim against a municipality for a constitutional deprivation which is tied directly to a policy or custom of the municipality.

### C.  The City's and Parnell's motion to dismiss the § 1983 claims against the City and Parnell, in his official capacity, should be granted.

The City and Parnell assert Plaintiffs' Complaint makes no mention of policies and does not specify any policymaker.  (Doc. 7-1). The City and Parnell argue the Complaint lacks any specific allegations asserting with particularity a policy, statement, ordinance, regulation, or decision that was officially adopted or promulgated by the City, or an actor who was delegated policy-making authority. (Doc. 7-1). The City and Parnell further contend that considerably more proof than a single incident is necessary to establish a causal connection between the policy and the constitutional deprivation. (Doc. 7-1).

Plaintiffs must show that the City, a Louisiana municipality, was acting under color of state law at the time of the alleged acts.   Plaintiffs must show: (1) the existence of a municipal custom or policy; and (2) a direct causal link between the custom or policy and the alleged violation.  Monell, 436 U.S. at 694.  Official policy can arise in various forms.  It usually exists in the form of written policy statements,

ordinances, or regulations, but may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." Piotrowski, 237 F.3d at 579. A policy is official only "when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989).

In their brief, Plaintiffs do not address municipal liability, and do not address the fact that their Complaint makes no mention of policies or a policymaker. Doc. 12). Rather, Plaintiffs assert that they affirmatively pleaded Defendants acted under color of state law and within their course and scope of employment, as their actions were taken in their capacities as state officials employed by the Sheriff of Avoyelles Parish, and as to Parnell, the City. (Doc. 12). Plaintiffs assert their Complaint, corroborated with the detailed autopsy report attached to the Complaint, states that Defendants acted in concert to maliciously cause Armando's death. (Doc. 12). Plaintiffs point to the autopsy report, asserting Armando's death was the result of a combination of Defendants' actions. (Doc. 12).

Although only the City and Parnell seek dismissal, Plaintiffs ask for a voluntary dismissal of their federal claims against Sheriff Anderson, Alexander, Spillman, and Parnell, in their official capacities, and the City "in its official capacity." (Doc. 12).[2] A municipality does not have separate individual and official

---

[2] Because Plaintiffs seek voluntary dismissal of their § 1983 claims against Sheriff Anderson, Alexander, Spillman, and Parnell, in their official capacities, those claims should be dismissed without prejudice. Plaintiffs retain their individual capacity claims under § 1983 against Sheriff Anderson, Alexander, Spillman, and Parnell. Thus, for purposes of this

capacities.  However, Plaintiffs state they ask the Court to dismiss the City as the employer of Parnell for his federal claims because *respondeat superior* does not attach to his § 1983 claims.  (Doc. 12).  Plaintiffs seek to retain their federal claims against Defendants in their individual capacities. (Doc. 12).

Plaintiffs also fail to plead facts which, accepted as true, would support <u>Monell</u> liability against the City.  Plaintiffs' Complaint does not include factual allegations that a specific policy or custom exists in the City, or that the specific policy or custom caused the violations Plaintiffs allege.  Plaintiffs do not allege any facts identifying a policymaker.  Municipalities cannot be liable under § 1983 for the constitutional torts of their employees under the doctrine of respondeat superior. <u>Monell</u>, 436 U.S. 658.  Accordingly, Plaintiffs' claims under § 1983 against the City and Parnell, in his official capacity, should be dismissed.

### D.    The City's and Parnell's motion to dismiss Plaintiffs' § 1983 claims against Parnell, in his individual capacity, should be granted.

Parnell seeks dismissal to the extent Plaintiffs assert individual capacity claims against him.[3]  (Doc. 7).  Parnell contends he is entitled to qualified immunity, and that the Complaint does not specifically state how Parnell violated Plaintiffs'

---

motion, the Court will address Plaintiffs' claims against Parnell, in his individual capacity, under § 1983.

[3] Plaintiffs seek to maintain their § 1983 claims against Sheriff Anderson, Alexander, and Parnell, in their individual capacities.  (Doc. 12).  Presently, only Parnell seeks dismissal. (Doc. 7).  Yet, a review of Plaintiffs' claims against Sheriff Anderson, Alexander, and Parnell, construed in a light most favorable to Plaintiffs, shows Plaintiffs' Complaint fails to allege the specific acts and omissions as to each Defendant.  (Doc. 1).  Plaintiffs alternatively request the Court allow them to amend. (Doc. 12).  As is discussed herein, Plaintiffs should be allowed to amend their Complaint to provide the specific allegations as to each Defendant in their individual capacity.

constitutional rights. (Doc. 7-1).  Parnell asserts he was acting within the course and scope of his lawful powers and duties, and that immunity should apply. (Doc. 7-1). Parnell asserts there are no specific allegations against Parnell that are sufficient to overcome the Rule 12(b)(6) standard. (Doc. 7-1).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, the court conducts the two-part analysis set forth in Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009). The court decides "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." Pasco v. Knoblauch, 566 F.3d 572, 579 (5th Cir. 2009) (citing Saucier, 533 U.S. at 201).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Lytle v. Bexar Cnty., Tex., 560 F.3d 404, 410 (5th Cir. 2009) (quoting Saucier, 533 U.S. at 202).  "If the answer to either of the two above questions is 'no,' qualified immunity applies and the government official is immune from suit. The plaintiff bears the burden of overcoming the qualified immunity defense." Deshotels v. Marshall, 454 Fed.Appx. 262, 266 (5th Cir. 2001) (citing Bennett v. City of Grand Prairie, Tex., 883 F.2d 400, 408 (5th Cir. 1989)).

Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Saucier, 533 U.S. at 206).

Plaintiffs assert an excessive force claim against Parnell, alleging Alexander and Parnell used excessive force in the seizure of Armando "by maliciously killing him in violation of the Fourth and Fourteenth Amendments to the Constitution." (Doc. 1).[4]  However, "[p]laintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusory assertions: [t]he plaintiff must allege specific facts giving rise to a constitutional violation." Oliver v. Scott, 276 F.3d 736,

---

[4] To prevail on an excessive force claim, Plaintiffs must establish: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir. 2005). "[A]n injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances." Bush v. Strain, 513 F.3d 492, 501 (5th Cir. 2008). "The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." Id. The test for reasonableness must consider "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Because "police officers are often forced to make split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving," the courts must not use "the 20/20 vision of hindsight." Escobar v. Montee, 895 F.3d 387, 393–94 (5th Cir. 2018) (citing Graham, 490 U.S. 386, 396–97 (1989)). Instead, the courts must look at the case from the perspective of a reasonable officer on the scene, paying careful attention to the facts and circumstances of each particular case. See id. When viewing "the totality of the circumstances," particular attention must be paid to the Graham factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Escobar, 895 F.3d at 393–94 (citing Darden v. City of Fort Worth, 880 F.3d 722, 728–29 (5th Cir. 2018) (quoting Graham, 490 U.S. at 396)).

741 (5th Cir. 2002) (internal citations omitted); see also Kennen v. Tejada, 290 F.3d 252, 261 (5th Cir. 2002) (citing Saucier, 533 U.S. 194) ("The threshold question is 'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'"). Further, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

A review of the Complaint, construed most liberally in Plaintiffs' favor, shows Plaintiffs fail to allege more than conclusory allegations against Parnell. The autopsy report attached to the Complaint states the cause of death as "[a]sphyxia due to respiratory compromise due to law enforcement arrest with contribution of hypertensive atherosclerotic cardiovascular disease, obesity (BMI=37), and electronic control device shocks." (Doc. 1-2). However, Plaintiffs fail to set forth specific acts or omissions in their Complaint to establish a constitutional violation by Parnell in his individual capacity.

While there is no motion to amend before the Court, Plaintiffs alternatively seek to amend their Complaint under Rule 15(a). (Doc. 12). Defendants did not file a reply to Plaintiffs' request to amend.

Fed. R. Civ. P. 15(a)(1) provides that:

a party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, the party may amend within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  A court should freely give leave when justice so requires.  Fed. R. Civ. P. 15(a)(2).  A district court "acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." Rio Grande Royalty Co. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th Cir. 2010) (citing Briggs v. Mississippi, 331 F.3d 499, 508 (5th Cir. 2003)).

Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted).  The Court, seeing no evidence of those relevant factors, recommends Plaintiffs be allowed to amend their Complaint to assert the specific acts or omissions by Parnell to support their individual capacity claims against Parnell.  Plaintiffs should amend their Complaint to state what each Defendant did to violate Plaintiffs' constitutional rights.

**E.** **The City's and Parnell's motion to dismiss Plaintiffs' claims of deliberate indifference against Parnell should be granted.**

Parnell further asserts that the allegations of the Complaint against him do not meet the requirements under the standard for deliberate indifference. (Doc. 7-1). Parnell argues Plaintiffs fail to plead with particularity specific allegations against Parnell. (Doc. 7-1).

The Fifth Circuit treats medical care claims by arrestees identically to those raised by pretrial detainees. Nerren v. Livingston Police Dep't, 86 F.3d 469, 472-73 (5th Cir. 1996). "[T]he constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." Kitchen v. Dallas Cty., 759 F.3d 468, 477 (5th Cir. 2014) (quoting Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)). A constitutional claim by a pretrial detainee arising from a one-time denial of medical care is governed by a standard of subjective deliberate indifference as enunciated by the United States Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994). Hare, 74 F.3d at 643.

To prove deliberate indifference, Plaintiffs must demonstrate Armando was exposed to an objectively "substantial risk of serious harm" and that Parnell "was actually aware of the risk, yet consciously disregarded it." Lawson v. Dallas Cty., 286 F.3d 257, 262 (5th Cir. 2002). "Deliberate indifference is more than mere negligence," and "disagreement with medical treatment alone cannot support such a claim." Gibbs v. Grimmette, 254 F.3d 545, 549 (5th Cir. 2001) (citations omitted). "Deliberate indifference is an extremely high standard to meet," and a "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Here, Plaintiffs fail to allege any particular allegations as to Parnell, individually. Plaintiffs argue they allege Armando was improperly denied medical care when, after being choked and tasered by "Defendants" and despite labored breathing and gasping for air, the "Defendant Officers" never rendered any first aid. (Doc. 12). Plaintiffs assert the officers were trained in cardiopulmonary resuscitation ("CPR") yet chose to ignore obvious signs Armando's life was in danger. (Doc. 12). Plaintiffs' Complaint alleges Parnell and Spillman approached Armando about an outstanding arrest warrant they were made aware of by a confidential informant. (Doc. 1). Plaintiffs allege "the officers ordered him to come down off the tractor and surrender to them" resulting in an argument escalating into "one of the defendants climbing on the tractor, placing Armando in a rear naked chokehold, and the other officers repeated tazing him with a Taser." (Doc. 1). Plaintiffs assert that after "repeated choking and tazing Armando, the three officers then took Armando Frank off the tractor and compressed his chest into . . . positional asphyxia by pinning him against the tractor, the ground[,] and a police vehicle." (Doc. 1).

Plaintiffs argue that this, per the autopsy, combined with the electric shocks, contributed to his death and was ruled a homicide. (Doc. 1). Plaintiff further assert that despite Armando's obvious distress, including gasping and heavy breathing, no attempts were made by "defendants" to improve his airway or give him CPR until EMS arrived. (Doc. 1). Plaintiffs claim all three officers were trained in CPR, yet none attempted to save Armando's life. (Doc. 1). Plaintiffs' Complaint, however, fails to contain any specific allegations as to Parnell, his role regarding failure to render

16

medical care to Armando, or any allegations as to his subjective intent to cause harm. Thus, Plaintiffs fail to state a claim for relief for deliberate indifference against Parnell.

As is discussed herein, however, Plaintiffs seek to amend their Complaint to more specifically allege their claims against Defendants in their individual capacities. Under Fed. R. Civ. P. 15(a)(2), Plaintiffs should be allowed to amend to more particularly assert their claims against Parnell, individually.

### F.    The City and Parnell are not entitled to discretionary immunity from Plaintiffs' state law claims of excessive force.

Plaintiffs allege "Alexander, Spillman[,] and Parnell used excessive force in the seizure of Armando Frank by maliciously killing him in violation of the Fourth and Fourteenth Amendments." (Doc. 1).  Plaintiffs claim the City is "vicariously liable for state law delicts" of Parnell through La. Civ. Code art. 2320. (Doc. 1).  Plaintiffs contend that Parnell, an employee of the City, is also indebted to Plaintiffs for the wrongful death of Armando, as well as damages for the survival action to the estate of Armando.  (Doc. 1). Plaintiffs allege Armando "survived for several agonizing minutes while being killed." (Doc. 1). Plaintiffs also claim Parnell is liable for lost chance of survival for the officers' failure to render CPR when Armando was dying in their custody. (Doc. 1).  Otherwise, the Complaint contains no specific factual allegations as to Parnell.

The City and Parnell invoke statutory immunity as to Plaintiffs' state law claims under La. R.S. 9:2798.1(B). (Doc. 7-1).  The City and Parnell contend Parnell was within the course and scope of his lawful powers and duties and that immunity

should apply. (Doc. 7-1).  The City and Parnell argue Plaintiffs' Complaint contains no specific allegations against Parnell that overcome the Rule 12(b)(6) standard.  The City and Parnell assert that the Complaint does not assert any acts that are directly attributable to Parnell.  (Doc. 7-1). The City and Parnell claim that, even if the Complaint made specific assertions, Parnell is entitled to qualified immunity if his conduct is objectively reasonable. (Doc. 7-1).

"Louisiana applies qualified immunity principles to state constitutional law claims based on '[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983.'" Mallery v. Theriot, 2013 WL 2286667, at *2 (W.D. La. May 23, 2013) (citing Roberts v. City of Shreveport, 397 F.3d 287, 296 (5th Cir. 2005)).  Subsection B of La. R.S. 9:2798.1 provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or their failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. R.S. 9:2798.1(B). In other words, La. R.S. 9:2798.1 provides immunity to state officials for discretionary acts.  However, "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct" are not subject to this provision. La. R.S. 9:2798.1(C)(2).

In Gregor v. Argenot Great Cent. Ins. Co., 851 So.2d 959, 966 (La. 2003), the Louisiana Supreme Court held that the object of La. R.S. 9:2798.1 "is to provide immunity from liability for offenses and quasi offenses of public entities, as defined

therein, when the acts or omissions of the public entities are policymaking or discretionary acts or omissions." Thus, "Section 9:2798.1's text is clear, and the Louisiana Supreme Court has emphasized, that discretionary function immunity only 'applies to policymaking or discretionary acts.'" Cloud v. Stone, CV 18-1070, 2019 WL 238066, at *2 (W.D. La. Jan. 16, 2019) (citing Poche v. Gautreaux, 973 F. Supp. 2d 658, 674 (M.D. La. 2013) (quoting Gregor, 851 So.2d 959 at 967)).  Section 9:2798.1 "does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions; i.e. decisions based on social, economic, or political concerns." Lockett v. New Orleans City, 639 F.Supp.2d 710, 745 (E.D. La. 2009), aff'd, 607 F.3d 992, (5th Cir. 2010), cert. den., 562 U.S. 1003 (2010) (quoting Saine v. City of Scott, 819 So.2d 496 (La.App. 3 Cir. 2002)).  Discretionary immunity "protects the government from liability only at the policy-making or ministerial level, not at the operational level." Lockett, 639 F. Supp. 2d at 745 (quoting Fowler v. Roberts, 556 So.2d 1, 15 (La. 1989)).

Louisiana law provides for vicarious liability, or *respondeat superior*, of employers for the actions of their employees.  La. Civ. Code art. 2320.  Louisiana tort law does not recognize the same limitations on vicarious liability found in § 1983 jurisprudence.  Deville v. Marcantel, 567 F.3d 156, 173 (5th Cir. 2009) ("Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."). "The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are

liable for any injuries which result." Matthews v. City of Alexandria, 2014 WL 6977942, at *3 (W.D. La. Dec. 9, 2014) (citing La. Civ. Code art. 2320; Kyle v. City of New Orleans, 353 So.2d 969, 972 (La. 1977)). Negligence at the operational level unrelated to public policy consideration is not protected from discretionary immunity. Gregor, 851 So.2d at 968.

Here, Plaintiffs have not alleged that any policymaking or discretionary acts resulted in Armando's death. Rather, Plaintiffs allege excessive force claims as to all Defendants without specifying the acts or omissions of each Defendant. Plaintiffs' allegations amount to negligence at the operational level. Plaintiffs assert vicarious liability against the City for the actions of Parnell while in the course and scope of employment. (Doc. 1). Thus, to the extent Plaintiffs assert excessive force claims under state law against Parnell and vicarious liability against the City, the City and Parnell are not entitled to discretionary immunity under La. R.S. 9:2798.1.

G. **Plaintiffs fail to state plausible claims for relief under state law.**

Under Louisiana law, "an employer is liable for its employee's torts committed if, at the time, the employee was acting within the course and scope of his employment." Timmons v. Silman, 761 So. 2d 507, 510 (La. 5/16/00); see La. Civ. Code art. 2320. If there is no underlying tort, there can be no basis for the imposition of vicarious liability. See Mathieu v. Imperial Toy Corp., 646 So. 2d 318 (La. 11/30/94).

As previously noted, Plaintiffs fail to allege specific allegations against Parnell sufficient to state a claim that is plausible on its face. Twombly, 555 U.S. at 569 n. 14. Plaintiffs make general accusations against the City and Parnell of excessive

force and vicarious liability, but do not provide specific factual assertions as to Parnell. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Iqbal, 556 U.S. at 678.  The City's and Parnell's motion to dismiss Plaintiffs' state law claims should be granted.

## III.   Conclusion

Because Plaintiffs seek to voluntarily dismiss federal claims against the City and official capacity claims under § 1983 against Sheriff Anderson, Alexander, Spillman, and Parnell; because Plaintiffs have failed to state plausible claims for relief against the City and Parnell; and because the City and Parnell are not entitled to discretionary immunity for state law claims of negligence at the operational level by Parnell;

IT IS RECOMMENDED that the Rule 12(b)(6) Motion to Dismiss (Doc. 7) filed by the the City and Parnell be GRANTED IN PART and DENIED IN PART.  To the extent Plaintiffs seek to voluntarily dismiss their federal claims against the City and Parnell, in his official capacity, and to the extent Plaintiffs fail to state plausible claims for relief under § 1983 and state law against the City and Parnell, the City's and Parnell's motion should be GRANTED IN PART, and those claims should be DISMISSED WITHOUT PREJUDICE, subject to Plaintiffs' right to seek leave to amend, as set forth above.  To the extent Defendants seek dismissal of Plaintiffs' state law claims under La. R.S. 9:2798.1, the City's and Parnell's motion should be DENIED IN PART.

IT IS FURTHER RECOMMENDED that the Motion to Stay Discovery (Doc. 7) filed by the City and Parnell be DENIED AS MOOT.

IT IS FURTHER RECOMMENDED that Plaintiffs' official capacity claims under § 1983 against Sheriff Anderson, Spillman, and Alexander be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___14th___ day of May, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge

22