**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **DON FRANK, ANTONIO FRANK, INDIVIDUALLY, AND AS THE REPRESENTATIVES OF THE ESTATE OF ARMANDO FRANK**<br>**Plaintiffs** | **CIVIL ACTION NO.**<br>**1:18-CV-00978** |
| **VERSUS** | **JUDGE DRELL** |
| **OFFICER KENNETH PARNELL, THE CITY OF MARKSVILLE, DEPUTY BRANDON SPILLMAN, DEPUTY ALEXANDER DANIELS, AND DOUG ANDERSON, THE SHERIFF OF AVOYELLES PARISH, IN HIS OFFICIAL CAPACITY**<br>**Defendants** | **MAGISTRATE JUDGE**<br>**PEREZ-MONTES** |

_____

**PLAINTIFF'S FIRST SUPPLMENTAL & AMENDED COMPLAINT FOR DAMAGES**
**UNDER 42 USC 1983**
**WRONGFUL DEATH AND SURVIVAL ACTIONS UNDER STATE LAW**
_____

**1.**
**INTRODUCTION**

This is a civil rights lawsuit brought by the Plaintiffs Don Frank and Antonio Frank, individually, as the surviving heirs of their brother, Armando Frank, and as representatives of Armando Frank's estate, for the violation of Armando's Civil Rights, his survival action and his wrongful death.

This lawsuit was previously docketed as 1:18-CV-00978, named as in the first complaint, Defendants, KENNETH PARNELL, CITY OF MARKSVILLE, DEPUTY SPILLMAN, DEPUTY ALEXANDER, and SHERIFF ANDERSON, were granted their Motion to Dismiss under FRCP 12 (B) 6 and the case was dismissed without prejudice, with the Court granting Plaintiffs the right to amend their complaint and refile.

On behalf of the Plaintiffs, undersigned counsel, restates the claims as follows:

2.

## JURISDICTION

This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, and under the Civil Rights Act of 1871, 42 U.S.C. sections 1983 and 1988. This Court has jurisdiction of this cause under 28 U.S.C. sections 1331 and 1343. Venue is proper under 28 U.S.C. section 1391 in those Defendants, on information and belief, reside and the cause of action arises in the Parish of Avoyelles, State of Louisiana, Western District of Louisiana and that all alleged acts occurred within the jurisdiction of the Western District of Louisiana.  Supplemental jurisdiction attaches to the wrongful death and survival actions under 28 U.S.C. 1367.

3.

Plaintiffs Don and Antonio Frank are adults residing in the State of Texas, and the rightful representatives of their brother, Armando Frank, who died without descendants, wife, or living parents.  Upon information and belief, Defendants are adults domiciled in the Parish of Avoyelles, State of Louisiana, and for all times material to this complaint, were the deputies for the Sheriff of Avoyelles Parish, Doug Anderson, and a police officer employed by the City of Marksville, Louisiana, respectively.

Made Defendants are:

**DEPUTY BRANDON SPILLMAN**, a citizen of Louisiana and resident of Avoyelles parish, who at all times relevant to this complaint, was a deputy for the Sheriff of Avoyelles Parish acting in the course and scope of his employment and under color of state law.

**DEPUTY ALEXANDER DANIELS**, a citizen of Louisiana and resident of Avoyelles parish, who at all times relevant to this complaint, was a deputy for the Sheriff of

Avoyelles Parish acting in the course and scope of his employment and under color of state law.

**SHERIFF DOUG ANDERSON**, Sheriff of Avoyelles parish, in his capacity as employer of Defendants and vicariously liable for state law delicts of **SPILLMAN AND DANIELS** through La. CC 2320.

**OFFICER KENNETH PARNELL**, a citizen of Louisiana and resident of Avoyelles Parish, who at all times relevant to this complaint, was a police officer in the employ of the city of Marksville, Louisiana.

**THE CITY OF MARKSVILLE, LOUISIANA**, a political subdivision of the parish of Avoyelles Parish, and employer of **PARNELL**, vicariously liable for state law delicts of **PARNELL** through La. CC 2320.

4.
## FACTUAL ALLEGATIONS

**ARMANDO FRANK** was a veteran of the Armed Forces and a lifelong resident of Marksville, Louisiana. After leaving the service, he developed mental illness, a condition well known to law enforcement in Marksville. Frank was known to drive his tractor around town and was known as "the man on the tractor". He had previously been arrested by the Sheriff's office and the charges were dismissed upon Frank being released to the VA for psychological treatment.  On information and belief, the Sheriff's office transported Frank to the VA clinic.  In a small town like Marksville, everyone knew Armando Frank.

On October 20, 2017, Armando Frank drove his tractor to the Walmart parking lot in Marksville, Louisiana on a personal errand.

5.

As Frank was sitting on his tractor in the parking lot, he was approached by **BRANDON SPILLMAN** and **ALEXANDER DANIELS** about an outstanding arrest warrant they had been made aware of that day by a confidential informant.  Later**, KENNETH PARNELL** joined in the detention. Frank had never been arrested on the matter had had no knowledge of any arrest warrant.

6.

Frank asked to see the warrant. He was told by **DANIELS** that he could see it at the station. He asked what his charges were. **DANIELS, SPILLMAN AND PARNELL** refused to tell him. This is in violation of State law, which reads, in pertinent part:

> La. C.Cr.P. Art. 218.1. Advice of reasons for arrest or detention and of rights
>
> When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.

7.

At that point, the officers ordered him to come down off the tractor and surrender to them without telling him his charges. The parties began a verbal argument over whether there was a warrant for his arrest and what he was being arrested for. Frank demanded to know the reason for his arrest. The officers refused to give him that reason.

8.

The argument between Frank and the officers escalated into **SPILLMAN** climbing on the tractor, placing Frank in a rear naked chokehold, and **PARNELL AND DANIELS** repeatedly tazing/attempting to taze Frank with a Taser.

9.

## EVIDENCE OF MANUAL STANGULATION BY BRANDON SPILLMAN

The autopsy of Armando Frank by Dr. Tape evidences signs of manual strangulation on

Armando Frank caused by Brandon Spillman.

> "There are injuries that are consistent with evidence of a manual
> strangulation. These include external neck abrasions. There is an
> abrasion on the left anterior lateral neck measuring 2.0 x 0.5 cm.
> Underneath this there are four diffuse abrasions measuring 3.0 x 1.0 cm.
> Internally, there are strap muscle hemorrhages including the SCM on the
> left, the omohyoid on the left and sternohyoid on the left. (There are no
> fractures of the hyoid or larynx.) There are hemorrhages of the thyroid
> gland which is enlarged with colloid-filled nodules some of which are
> collapsed. There are petechial hemorrhages of the sclera and conjunctiva
> of the eyes."

10.

After repeated choking by **SPILLMAN**, **PARNELL AND DANIELS** began

tazing/attempting to taze Frank.  The following actions were committed by Parnell and

Daniels and summarized by Dr. Tape in his autopsy:

> "A review of the video shows the decedent received two ECD probes fired
> at him and one and possibly two drive stuns to him. The first ECD probe is
> fired into his right chest at approximately 2:44 to 2:46 when it appears the
> decedent pulls out the wires and/or one of the probes. A second ECO is
> fired with probes landing in the left leg by the body cam officer at
> approximately 2:57 on the video. This shock lasts apparently only 2-3
> seconds as the wires are pulled out by the decedent. A second shock from
> the ECD shocks the officer on the tractor and not the decedent apparently
> at 3:05 in the video. At approximately 3:19 there is a drive stun by an ECD
> to the left leg that lasts approximately 2 seconds. At approximately 3:35 in

the video an ECD shock is heard but not seen and sounds similar to the previous drive stun. This last for approximately 2 seconds."

11.

The three officers then dragged Armando Frank off the tractor and **SPILLMAN, PARNELL AND DANIELS** compressed his chest into what is known as compressional asphyxia by pinning him against the tractor, the ground and a police vehicle, compromising his respiration, causing him to gasp for air and later placing him in positional asphyxia on the ground and in the police car, causing his death by asphyxia. Dr. Tape, the pathologist that investigated the death of Frank and performed the autopsy, summarizes the respiratory compromise in his autopsy:

> "165 seconds of compressional asphyxia being pressed against the tractor, 27 seconds of compressional asphyxia being face down on the ground with his hands behind his back and 41 seconds of positional asphyxia while loading, as well as 148 seconds of positional asphyxia in the back of the SUV. Prior to being lifted off the ground, this includes 3 minutes and 33 seconds, with 3 minutes and 9 seconds after being lifted off the ground and placed in the SUV. The video ends before EMS arrives."

12.

According to the autopsy, this combination of **SPILLMAN'S** chokehold, repeated electrical shock with the Taser by **PARNELL AND DANIELS**, and **SPILLMAN, PARNELL AND DANIELS'** compressing and positioning his body in such a way as to compromise his respiration, combined to cause his death by asphyxia. The Autopsy is herein incorporated as Exhibit A.

13.

The manner of death was ruled a homicide by the pathologist Dr. Tape in the autopsy and he held the three officers **(PARNELL, DANIELS AND SPILLMAN)** responsible for the death.

> "It appears likely that the decedent primarily died as a result of respiratory (and possibly some vascular) compromise due to a struggle with police, supported by autopsy and video evidence. This compromise consists of a combination of the neck holds experienced (strangulation), the body being pressed, compromising ventilation (compressional asphyxia), the body on the ground with hands behind the back and personnel on him (compressional asphyxia and positional asphyxia), and the body face down with hands behind the back in the back of an SUV (positional asphyxia). The total time of this compromise is 6+ minutes without any immediate follow up airway management or other resuscitative measures."

Dr. Tape further rejected the argument that he died a natural death:

> "The natural disease of hypertensive atherosclerotic cardiovascular disease as well as obesity made the decedent likely more vulnerable to stress including respiratory compromise and therefore should be considered as contributing factors. Although this does represent significant natural disease, it should not be thought of as the primary cause of death as the decedent was alive (and well) prior to the police intervention and dead following, **making the police intervention the likely intervening factor that led to his death**."

14.

Despite Armando Frank's obvious distress, including gasping and heavy breathing, no attempts were made by **PARNELL, SPILLMAN or DANIELS** to improve his airway or give him CPR until EMS arrived, long too late to save Frank. **SPILLMAN, PARNELL and DANIELS**, in combination, intentionally committed serious bodily injury upon Frank,

rendering him in respiratory distress and unconsciousness. The definition of 2nd degree battery in Louisiana is as follows:

§34.1.  Second degree battery

Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.

For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

**SPILLMAN, PARNELL AND DANIELS**, together, committed a battery upon Frank that caused Frank to become unconscious and in serious respiratory distress. **FRANK'S** unconscious body was dragged across the parking lot like a side of beef, and put into an SUV where neither **DANIELS, SPILLMAN OR PARNELL** checked on his airway, allowing him to die after more than six minutes of respiratory compromise that they caused.

15.

On information and belief, timely application of CPR or opening his airway by **SPILLMAN, PARNELL or DANIELS** could have saved Frank's life. This was never attempted by any Defendant because no defendant ever bothered to check on their prisoner, who was handcuffed and thrown into the back of a police unit.  On information and belief, all three officers were trained in CPR and have a duty to administer CPR when needed, but none attempted to save Frank's life. They were willfully indifferent to Frank's medical condition.

16.
## CIVL RIGHT VIOLATIONS: EXCESSIVE FORCE

Plaintiffs incorporate all the foregoing allegations, herein. Defendants **ALEXANDER DANIELS, BRANDON SPILLMAN AND KENNETH PARNELL,** together in combination**,** used excessive force in the seizure of Armando Frank by maliciously killing him in violation of the Fourth and Fourteenth Amendments to the Constitution. This combination of a misapplied chokehold, compressional asphyxia, positional asphyxia, and multiple tazing by the defendants, who acted together in an intentional and/or willful act to cause serious bodily injury to Frank, caused Frank's death.

17.

As a result of this Civil Rights violation for the homicide of Armando Frank, Plaintiffs Don and Antonio Frank seek damages for their loss of love, affection, support, as well as loss of enjoyment of life.

18.
## STATE LAW VIOLATIONS AND
## VICARIOUS LIABLILITY OF THE SHERIFF OF AVOYELLES PARISH AND
## THE CITY OF MARKSVILLE, LOUISIANA
## FOR ACTIONS UNDER STATE LAW

Deputies **SPILLMAN AND DANIELS** were acting under color of his authority as Avoyelles Parish Sheriff's deputies. **DOUG ANDERSON**, as Sheriff, is liable for all state law delicts and torts of his employees committed in the course and scope of their employment. Therefore, the Sheriff is vicariously liable for the wrongful death of Armando Frank and is indebted to Don and Antonio Frank for the death of their brother, as well as damages for the survival action to the estate of Armando Frank, who survived for several agonizing minutes while being killed.  Additionally, officer **PARNELL**, an employee of the City of Marksville, Louisiana, is also indebted to the Franks for the

wrongful death of Armando Frank, as well as damages for the survival action to the estate of Armando Frank, who survived for several agonizing minutes while being killed, as well as his lost chance of survival by **SPILLMAN, DANIELS AND PARNELL** failing to render CPR when Frank was dying in their custody. The city of Marksville is vicariously liable for Officer **PARNELL's** state law torts while in the course and scope of his duty during this wrongful death.

19.

**PARNELL, DANIELS AND SPILLMAN** knew that attempting to arrest a citizen without fulling explaining the reason for his arrest violates his rights under State law. The law offers no discretion. La. C.Cr.P. Art. 218.1 says when arresting or detaining a person, he ***shall be fully advised of the reason for his arrest*** or detention. "We'll tell you later" is not acceptable and likely needlessly escalated this situation into a tragedy.

20.

Armando Frank died because he dared to demand to know why the police were arresting him. Every citizen deserves the dignity of knowing why the police are arresting him.

21.

By refusing to get the warrant or call in to find out the charges to convey to Frank, the officers needlessly escalated this arrest and provoked Frank into refusing to get off the tractor, allowing them to use massively excessive force to seize his person. Once off the tractor, **SPILLMAN, PARNELL AND DANIELS** continued to press all their weight on Frank's body, putting him in extreme respiratory distress. Frank can be heard on the video in serious respiratory distress.  Anyone there with him would have heard what the

listener hears on the audio. The officers ignored his distress and continued applying all their combined body weight, and pressing it against Frank, even after he is off the tractor. Moments later, Frank was unconscious on the ground. Rather than checking his vitals, the Defendants dragged his unconscious body across the concrete parking lot and dumped his handcuffed body into a vehicle, where he died of positional asphyxia.

22.

Plaintiffs also pray for punitive damages and reasonable attorney's fees against defendants for their willful indifference of Frank's federally protected rights.

23.

Plaintiffs pray for a trial by jury.

24.

The three Defendants, **SPILLMAN, PARNELL AND DANIELS**, together acted in conspiracy to cause serious bodily harm upon Frank, and as intentional tortfeasors, are solidarily liable for FRANK'S death under state law CC Art. 2324 (A).  The law reads, in pertinent part, as follows:

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.

## PRAYER FOR RELIEF

Plaintiffs request that this Court assume jurisdiction over this cause, grant them compensatory and punitive damages, costs and attorney's fees, judicial interest running from date of demand, and award all other proper relief.

*/s/ Joseph J. Long*
Joseph J. Long, Bar #25968
251 Florida St., Ste. 308
Baton Rouge, LA 70801
Ph: 225-343-7288
Fax: 225-267-5664
josephjlong@juno.com

*Attorney for Plaintiffs*


## CERTIFICATED OF SERVICE

I hereby certify that a copy of this pleading has been filed electronically with the Court's online CM/ECF system on this 18th day of June, 2019. Notice of this filing will be sent to defendants' counsel by operation of this Court's electronic filing system.

*/s/Joseph Long*
Joseph J. Long