Case Number: 294-17AV

REPORT OF THE FORENSIC PATHOLOGIST
LOUISIANA FORENSIC CENTER, LLC
P. O. Box 398
Youngsville, LA 70592
Phone 337-504-2019
Fax 337-504-2808

**Name of Decedent:** Armando, Frank
**Address:** 2124 Hwy 1192, Marksville, LA
**Social Security Number:** Not available
**Date of Birth:** 09/05/73, age 44
**Place of Death:** Avoyelles Hospital
**Investigator:** Mayeux, M.D.
**Witnesses:** Honea & Norad

**Date/Time of Death:** 10/20/17, 1150 hours
**Date/Time of Autopsy:** 10/23/17, 1000 hours
**Body Identified By:** Avoyelles Parish Coroner's Office

**Security Tag Number:**

**Prosector:** _____
Christopher Tape, MD
Forensic Pathologist

**Completed:** _____ 2/1 _____, 2018

**Assisted By:** John Peno and Andrew Jeanmard, Louisiana Forensic Center

**CAUSE OF DEATH**
Asphyxia due to respiratory compromise due to law enforcement arrest with contribution of hypertensive atherosclerotic cardiovascular disease, obesity (BMI=37), and electronic control device shocks

**MANNER OF DEATH**
Homicide

### ANATOMIC SUMMARY

I. Evidence of asphyxia:
    A. Evidence of manual strangulation:
        1. Petechial hemorrhages:
            a. Eyes; sclera and conjunctiva
        2. Strap muscle hemorrhages of neck:
            a. Sternocleidomastoid, left
            b. Omohyoid, left
            c. Left sternohyoid
            d. No fracture of hyoid or larynx
        3. Thyroid injuries (enlarged secondary to multinodular goiter):
            a. Left, right and pyramidal lobes with hemorrhage and collapsed nodules
        4. External neck abrasions:
            a. Left anterior/lateral neck, horizontal, linear, 2.0 x 0.5 cm
            b. Left anterior/lateral neck, diffuse abrasions x4, 3.0 x 1.0 cm
        5. Video evidence:
            a. Carotid sleeper hold evolving to bar hold (15 seconds)
            b. Bar hold (approximately 6 seconds)
    B. Video evidence of compressional and positional asphyxia:
        1. Body pressed against tractor from behind pulled from front with decedent holding on (3;50 to 6;35) (2 minutes and 45 seconds)
        2. Decedent with heavy breathing between neck holds

Exhibit A

      3. Decedent with cough and gasping at 3;48 and 4;17 on video
      4. Decedent speaking during this time with increasingly deep and strained voice
      5. Off tractor onto ground approximately 6;42 in video
      6. Cuffed face down with hands behind back with multiple personnel partially on back and neck (6;52 to 7;19) (27 seconds)
      7. No response from decedent upon trying to lift and load (7;19 to 8;00) (41 seconds)
      8. Loaded into SUV face down with hands cuffed behind back (8;00 to 10;28) (2 minutes and 28 seconds)
   C. Total time of respiratory compromise = 6 minutes and 42 seconds (402 seconds):
      1. Approximately 15 seconds of carotid sleeper hold and bar hold, 6 seconds of bar hold, 165 seconds of compressional asphyxia pressed against tractor, 27 seconds compressional asphyxia pressed against the ground = 3 minutes and 33 seconds (213 seconds)
      2. 41 seconds loading, 148 seconds after loading prior to video ending = 3 minutes and 9 seconds (189 seconds)

II. Hypertensive atherosclerotic cardiovascular disease:
   A. Cardiomegaly with floppy configuration and biventricular dilation:
      1. 550 grams; 5.0 cm left, 4.0 cm right
   B. Atherosclerosis, coronary arteries and aorta, minimal to moderate
   C. Nephrosclerosis, bilateral, minimal

III. Obesity, BMI=37:
   A. Organomegaly:
      1. Renomegaly, splenomegaly and cardiomegaly

IV. Evidence of electronic control device shocks (ECD):
   A. Probe in right chest with underlying impact wound
   B. Impact wound on right chest with missing probe
   C. Video evidence:
      1. ECD probes fired into right chest:
         a. Wires apparently pulled out by decedent
      2. ECD probes fired into left leg:
         a. Decedent pulls out wires
         b. Second shock from ECD at 3;05 in video shocks officer stopping neck hold
      3. ECD drive stun to left leg, approximately 2 seconds
      4. ECD drive stun heard but not seen, approximately 2 seconds

V. Miscellaneous injuries:
   A. Abrasion, right dorsal forearm
   B. Abrasion, left forehead
   C. Abrasions x3, right thigh, minimal vital reaction
   D. See above for injuries to chest and neck
   E. No internal organ injuries except thyroid

VI. Multinodular goiter of thyroid (benign)
VII. Cholelithiasis (gallbladder stones)
VIII. Status post appendectomy
IX. Toxicology positive:
   A. Caffeine

## EXTERNAL EXAMINATION

The body is that of a normally-developed, obese black man accompanied with the following personal items: White shoes, gray socks, blue sweat pants and underwear as well as keys. The body is identified by the Avoyelles Parish Coroner's Office. An identification tag is present on the body bag. The body weighs 276 pounds, is 72 inches in height and appears compatible with the reported age of 44 years. The body is cold. Rigor is present to an equal degree in all extremities. Fixed lividity is distributed on the posterior surfaces of the body, except in areas exposed to pressure. The scalp hair is brown and 0.1 cm in length. Facial hair consists of stubble. The irides are brown, the corneas are clear, the sclerae white, and the conjunctivae are tan, both with petechiae present. The pupils measure 3.0 mm bilaterally. The external auditory canals are free of foreign material and abnormal secretions. The nasal skeleton is palpably intact. The nares are free of foreign material and abnormal secretions. The lips are without evidence of injury. The oral cavity is free of foreign material and abnormal secretions. The teeth are natural without restorations. The neck and chest have injuries as described below but otherwise unremarkable. The abdomen is unremarkable. The extremities show no gross bony deformities. The fingernails are intact. There are no tattoos. Needle tracks are not observed. The external genitalia are those of a normal adult, circumcised man. The posterior torso is essentially without note. The anus is atraumatic. The skin is free of lacerations and burns. Scars from prior trauma are noted.

## EVIDENCE OF THERAPY

Evidence of recent medical intervention consists of EKG leads, AED pads and oral airway.

There is no evidence of prior medical intervention.

There is no evidence of organ procurement.

## EVIDENCE OF EXTERNAL /INTERNAL INJURY

### Autopsy Evidence of asphyxia:

There are injuries that are consistent with evidence of a manual strangulation. These include external neck abrasions. There is an abrasion on the left anterior lateral neck measuring 2.0 x 0.5 cm. Underneath this there are four diffuse abrasions measuring 3.0 x 1.0 cm. Internally, there are strap muscle hemorrhages including the SCM on the left, the omohyoid on the left and sternohyoid on the left. (There are no fractures of the hyoid or larynx.) There are hemorrhages of the thyroid gland which is enlarged with colloid-filled nodules some of which are collapsed. There are petechial hemorrhages of the sclera and conjunctiva of the eyes.

### Video evidence of asphyxia:

The video shows the decedent receiving a carotid sleeper hold evolving into a bar hold for approximately 15 seconds with another bar hold for approximately 6 seconds.

The video shows afterwards the body being pressed onto the tractor for various times from behind and being pulled from the front compressing the chest and abdomen and compromising the decedent's ability to ventilate. This occurs for roughly 2 minutes and 45 seconds. Between neck holds the decedent can be heard to be breathing heavily at approximately 3:05 in the video. The decedent coughs at 3:48 and coughs and gasps again at 4:17. The decedent speaks in a deep and strained voice multiple times including at 5:30, 6:02 and at 6:20 on the video tape. He is brought off the tractor at approximately 6:42 in the video and placed face down with his hands behind his back with multiple law enforcement officers partially on his back and neck and lower extremities. This occurs for approximately 27 seconds from 6:52 to 7:19 in the video. They try and lift him with no response at 7:19 to 8:00 for 41 seconds and report him as "dead weighting". He is loaded into the police SUV at approximately 8:00 face down and remains there until the end of the video at 10:28. There is no apparent attempt to control his airway. At approximately 9:40 in the video, someone is heard to be asked is he breathing, get him up, but there is no response and no action.

The review of the video shows a total of 402 seconds of respiratory compromise (6 minutes and 42 seconds). This includes approximately 15 seconds of a carotid sleeper hold and bar hold, 6 seconds of bar hold, 165 seconds of compressional asphyxia being pressed against the tractor, 27 seconds of compressional asphyxia being face down on the ground with his hands behind his back and 41 seconds of positional asphyxia while loading, as well as 148 seconds of positional asphyxia in the back of the SUV. Prior to being lifted off the ground, this includes 3 minutes and 33 seconds, with 3 minutes and 9 seconds after being lifted off the ground and placed in the SUV. The video ends before EMS arrives.

### Autopsy evidence of ECD shocks:

There is an ECS probe in the right chest with an underlying impact wound. There is a very similar impact wound also on the right chest superior and lateral to the probe.

### Video evidence of ECD shocks:

A review of the video shows the decedent received two ECD probes fired at him and one and possibly two drive stuns to him. The first ECD probe is fired into his right chest at approximately 2:44 to 2:46 when it appears the decedent pulls out the wires and/or one of the probes.

A second ECD is fired with probes landing in the left leg by the body cam officer at approximately 2:57 on the video. This shock lasts apparently only 2-3 seconds as the wires are pulled out by the decedent. A second shock from the ECD shocks the officer on the tractor and not the decedent apparently at 3:05 in the video.

At approximately 3:19 there is a drive stun by an ECD to the left leg that lasts approximately 2 seconds.

At approximately 3:35 in the video an ECD shock is heard but not seen and sounds similar to the previous drive stun. This last for approximately 2 seconds.

### Miscellaneous Injuries at autopsy:

There is an abrasion to the right dorsal forearm. There is an abrasion to the left forehead. There are three abrasions on the right anterior thigh with minimal vital reactions. There are no internal organ injuries, except the thyroid as described above.

## INTERNAL EXAMINATION

### Body Cavities:

The body is opened by the usual thoracoabdominal incision and the chest plate is removed. No adhesions or abnormal collections of fluid are present in any of the body cavities. All body organs are present in the normal anatomical positions. The subcutaneous fat layer of the chest wall is 3.0 cm thick. The subcutaneous fat layer of the abdominal wall is 6.0 cm thick.

### Musculoskeletal System:

Muscle development is normal. No bone or joint abnormalities are noted.

### Neck:

Evidence of injury to the neck is described above. The thyroid is enlarged with colloid-filled nodules. The left and right lobes each measure approximately 7.0 x 6.0 x 5.0 cm with the pyramidal lobe measuring 2.0 x 2.0 x 2.0 cm. Otherwise examination of the soft tissues of the neck including a layer-by-layer dissection of the strap muscles, thyroid gland and large vessels reveal no other abnormalities. The hyoid bone and larynx are intact.

### Cardiovascular System:

The heart weighs 550 g and has a normal but floppy configuration. The pericardial surfaces are smooth, glistening and unremarkable; the pericardial sac is free of significant fluid or adhesions. The coronary arteries arise normally, follow the usual distribution and are widely patent with evidence of minimal to moderate atherosclerosis but no thrombosis. There is biventricular dilation of 5.0 cm on the left and 4.0 cm on the right otherwise the chambers and valves exhibit the usual size-position relationship and are unremarkable. The left ventricle measures 0.8 cm thick, the septum measures 0.8 cm thick and the right ventricle measures 0.3 cm thick. The myocardium is red-brown, firm with no focal lesions; the atrial and ventricular septa are intact. The foramen ovale is closed. The aorta shows minimal atherosclerotic involvement. The pulmonary trunk does not show significant atherosclerotic involvement. The aorta and the pulmonary trunk and their major branches arise normally and follow the usual course. The ductus arteriosus is closed. The vena cavae and their major tributaries return to the heart in the usual distribution and are free of thrombi.

### Respiratory System:

The upper airway is clear of debris and foreign material; the mucosal surfaces are smooth, yellow-tan and unremarkable. The right lung weighs 900 g; the left lung weighs 800 g. The pleural surfaces are smooth and glistening with no focal lesions. The pulmonary parenchyma is pink and soft except in areas of dependent congestion which are dark red and firmer. No mass lesions are noted. The bronchial tree and pulmonary arteries are normally developed. There is no evidence of thromboembolic disease.

**Alimentary System:**

The tongue exhibits no evidence of recent injury. The esophagus is lined by gray-white, smooth mucosa. The gastric mucosa is unremarkable and the lumen contains 200 cc of partially digested food. The small and large bowels are unremarkable. The pancreas has an autolyzed, red/tan, lobulated appearance and the ducts are clear and of normal caliber. The appendix is absent.

**Liver and Biliary System:**

The liver weighs 1600 g. The hepatic capsule is smooth, glistening and intact covering moderately firm, red/brown parenchyma. The usual lobular architecture is identified on section. No mass lesions are noted. The gallbladder contains 20 ml green-brown bile along with one brownish yellow stone measuring 1.5 cm. The extrahepatic biliary tree is patent, without evidence of calculi.

**Genitourinary System:**

The right kidney weighs 200 g; the left kidney weighs 200 g. The renal capsules are smooth and thin, semitransparent and strip with the usual difficulty. The underlying cortical surfaces are finely granular and red-brown. On section the cortices are sharply delineated from the medullary pyramids, which are red-purple and unremarkable. The calyces, pelves and ureters are without note. The urinary bladder contains 50 cc of clear yellow urine; the mucosa is gray-tan and smooth. The prostate gland, seminal vesicles and testicles are without note.

**Reticuloendothelial System:**

The spleen weighs 200 g. It has a smooth, intact capsule covering red-purple, moderately firm parenchyma; the lymphoid follicles are unremarkable. The regional lymph nodes appear normal. The bone marrow is red and firm. The thymus is absent.

**Endocrine System:**

The thyroid has injuries and abnormalities as described above. The pituitary and adrenal glands are without note.

**Head/Central Nervous System:**

The scalp is reflected and is intact. The calvarium of the skull is intact and removed. The dura mater is intact; there is no epidural or subdural hemorrhage. The dural sinuses are patent. The brain is removed and weighs 1400 g. The basilar portion of the cranial vault is intact. The leptomeninges are thin and delicate. The cerebral hemispheres are symmetrical. The structures at the base of the brain, including the cranial nerves and blood vessels, are intact. Coronal sections through the cerebral hemispheres reveal no focal lesions. The ventricular system is of normal caliber. Transverse sections through the brainstem and cerebellum reveal no abnormalities. The spinal cord is not dissected.

**Histologic Sections:**

Representative samples from various organs are preserved in a storage container in 10% formalin.

**Toxicology:**

Heart blood, vitreous humor and urine are collected as well as gastric contents and submitted to the laboratory. A toxicology screen is requested.

**Photography:**

Photographs are taken during the course of the autopsy.

**Radiology:**

X-Rays are not obtained.

**Diagrams Used:**

Male diagram and head diagram.

**BODY CAM VIDEO TIMELINE AND REVIEW SUMMARY (BODY.X78037214.2066.171020.112304.628.MP4)(times approximate, from start of video):**

0;40 The body cam officer makes contact with the decedent and checks identification. The decedent refuses to get off the tractor multiple times and refuses to acknowledge a possible warrant being alleged by the officers. (The decedent appears annoyed but not excited or agitated, just sitting mainly)

2;10 Two officers on the right side of the tractor (right hand officer 1 and right hand officer 2) attempt to apprehend decedent by laying their hands on him while decedent fights them off briefly.

2;30 There is an ECD in the right hand of the body cam office. The body cam officer unsuccessfully attempts to apprehend the decedent by laying hands on him and the body cam goes off the decedent.

2;42 An ECD probe is fired into the right chest of the decedent by the right hand officer 1. The decedent apparently attempts to remove the wires and/or probes.

2;47 The noise from the ECD becomes louder (apparently as the wires and probes were disconnected).

2;50 At this time after the noise from the ECD has gone louder, the right hand officer 2 has climbed onto the tractor and is attempting to subdue the decedent via neck holds. This starts as a carotid sleeper hold and evolves into a bar hold as the decedent is struggling and moving forward with the officer's forearm against the neck.

2;57 ECD probes are fired into the left leg by the body cam officer.

3;03 The decedent grabs the ECD wires from his left leg and flings them behind him (onto the officer) and the noise of the ECD becomes louder and stops.

3;05 A second shock from the body cam officer ECD ends up shocking the right hand officer 2 who yells out for it stop and the body cam officer stops the shock. This temporarily stops the neck hold and the decedent is heard to be breathing heavily.

3;14 The officer on the tractor, right hand officer 2, resumes his neck hold primarily with a bar hold until approximately 3:20.

3;19 The decedent receives a drive stun from an ECD to the left leg apparently from the body cam officer's left hand (2nd ECD device).

3;20 to 3;30   The decedent continues to struggle with officers and he is partially pulled off the tractor and also against the front of the tractor. The body cam is partially off the decedent during this time.

3; 35     At approximately this time an ECD shock is heard but not seen which sounds like the previous drive stun.

3;30 to 3;50   At this time the struggle is continuing with the decedent being pressed onto the tractor from behind and pulled by his arms.

3;48     At this time the decedent can be heard coughing.

4;17 The decedent can be heard to be coughing and gasping at this time.

3;50 to 6;35   The body continues to be pressed and pulled against the tractor.

5;30   The decedent can be heard in a deep strained voice saying "you ain't got no damn warrant for my arrest".

6;01   The decedent again with a deep and strained voice can be heard to say "let me up" three times, followed by "my back".

6;18  The decedent is heard to be saying "I got..." then unintelligible.

6;20 to 6;25  The decedent is heard to be saying "let me up" three times in an increasingly deep and strained voice and that is the last verbal communication from the decedent.

6;42   At this point the decedent comes off of the tractor to the left side and multiple people attempt to get the decedent face down onto the ground between vehicles.

6;52  Multiple people are assisting the apprehension as they cuff the decedent face down with his arms behind his back. There are multiple personnel partially on the decedent at this time including on the back and neck. There is heavy breathing that seems to be the law enforcement officers and personnel and not the decedent (although it is uncertain).

7;19  Immediately upon cuffing the decedent, they tried to lift him but the decedent is unresponsive with no movements. Someone responds that he is "dead-weighting".

8;00  The decedent is loaded into a police SUV in the backseat face down with his hands behind his back cuffed, but no more can be seen from the video regarding the decedent directly.

9;40  Someone is heard to say "Is he breathing? Get him up" but there is no answer and no apparent action or reaction.

10;28   At this time the video ends and there is no apparent EMS on scene. There has been no apparent attempt to secure the airway or apply rescue breathing or other resuscitative measures at this time.

**Comment:**

## CIRCUMSTANCES:

The decedent was a 44-year-old black man who was pronounced in the hospital after a struggle with law enforcement. According to the report, the decedent has an ECD deployed to his right chest wall and was placed in the back of a police SUV. According to the report, EMS found the victim at 11:30 a.m. in the back of the SUV and CPR was begun. He was brought to the hospital at 11:39 a.m. with no IV or intubation. The decedent was being bagged but with no spontaneous respirations and the decedent was in asystole. The decedent was pronounced despite resuscitative efforts. The rectal temperature was 99°F in the hospital reportedly. An ECD probe was noted in the right chest wall. The time of the death was 11:50 a.m. A videotape was provided by the Sheriff's Office composed of a body cam video (BODY.X78037214.2066.171020.112304.628.MP4) that was reviewed as evidence.

## FINDINGS:

The primary finding at autopsy is evidence of manual strangulation, as well as evidence of hypertensive atherosclerotic cardiovascular disease, obesity and an electronic control device shock to the right chest. A review of the video body cam footage from the arrest incident shows evidence of respiratory compromise due to a combination of manual strangulation neck holds, compressional asphyxia, and positional asphyxia, as well as evidence of electronic control device shocks to the decedent.

At autopsy there is evidence of manual strangulation with external injuries to the neck including abrasions on the left anterior neck. Internally there are hemorrhages of neck strap muscles. There are injuries to the thyroid which is enlarged with multinodular goiter. These include collapsed colloid-filled nodules and hemorrhage of the thyroid. There are petechial hemorrhages of the sclera and conjunctiva of the eyes.

There is video evidence of a carotid sleeper hold evolving into a bar hold for approximately 15 seconds followed soon after by a bar hold for approximately 6 seconds.

There is video evidence of compressional and positional asphyxia. This includes the body being pressed onto the tractor from behind and pulled from the front compressing the chest and abdomen, compromising ventilation. This occurs for approximately 2 minutes and 45 seconds. Throughout this time, the decedent can be heard to be heavily breathing with occasional coughs and gasps. Also during this time, the decedent can be heard to speak in a deep strained voice multiple times before becoming verbally unresponsive. He was removed from the tractor and placed face down on the ground with his hands cuffed behind his back with multiple personnel partially on his back and neck. This goes on for approximately 27 seconds. They load him for approximately another 41 seconds and put him in the back of an SUV where he sits for another 2 minutes and 28 seconds without any apparent medical intervention. Video evidence shows a total time of respiratory compromise of approximately 402 seconds (6 minutes and 42 seconds).

There is hypertensive atherosclerotic cardiovascular disease. The heart is enlarged with a floppy configuration and biventricular dilation. There is minimal to moderate atherosclerosis

of the aorta and coronary arteries, and nephrosclerosis of the kidneys. The decedent is obese with a BMI of 37 and has partial organomegaly likely as a result of this. The kidneys, spleen and heart are all enlarged.

There is video evidence and autopsy evidence of ECD shocks. There is an ECD probe in the right chest with an underlying injury and a similar injury without a probe also on the right upper chest. There is video evidence of being shocked by an ECD at least 3, but possibly 4 times. The first shock occurs to the right chest from fired probes, but only lasts for a few seconds as the wires and probe are apparently pulled out by the decedent. A second ECD probe is fired into his left leg. The wires are pulled out by the decedent after a few seconds. The decedent is drive stunned by an ECD to the left leg for approximately 2 seconds. There is a possible, and probable, fourth drive stun ECD heard, but not seen, also for about 2 seconds.

There are miscellaneous injuries. There is an abrasion on the right dorsal forearm, and an abrasion on the left forehead. There are three abrasions on the right anterior thigh with minimal vital reactions. Other than the thyroid injury described above, there are no internal organ injuries.

There is multinodular goiter of the thyroid that is benign. There are gallbladder stones. The decedent is status post appendectomy. Toxicology is positive for caffeine.

**OPINION:**

It appears likely that the decedent primarily died as a result of respiratory (and possibly some vascular) compromise due to a struggle with police, supported by autopsy and video evidence. This compromise consists of a combination of the neck holds experienced (strangulation), the body being pressed, compromising ventilation (compressional asphyxia), the body on the ground with hands behind the back and personnel on him (compressional asphyxia and positional asphyxia), and the body face down with hands behind the back in the back of an SUV (positional asphyxia). The total time of this compromise is 6+ minutes without any immediate follow up airway management or other resuscitative measures.

Likely death resulted as a combination of complications of respiratory depression leading to asphyxia. This includes lowering of oxygen leading to hypoxia as well as increased carbon dioxide leading to acidosis.

There is no evidence of decedent hyperactivity on the video prior to the arrest. His temperature is only mildly elevated in the hospital. Toxicology is positive for caffeine only. All of these argue against excited delirium.

The natural disease of hypertensive atherosclerotic cardiovascular disease as well as obesity made the decedent likely more vulnerable to stress including respiratory compromise and therefore should be considered as contributing factors. Although this does represent significant natural disease, it should not be thought of as the primary cause of death as the decedent was alive (and well) prior to the police intervention and dead following, making the police intervention the likely intervening factor that led to his death.

The ECD probes to the right chest theoretically could cause a cardiac capture with resulting ventricular fibrillation, asystole, and death. Although this cannot be entirely ruled out, it appears that the respiratory compromise was more significant in this case. Although there may not be direct cardiac effects from the ECD, the ECD likely caused respiratory compromise by paralyzing the muscles of ventilation including the chest, abdomen and accessory muscles. In addition the pain of being shocked likely stopped effective breathing, at least temporarily. For these reasons it seems that the ECDs contributory effect on ventilation may be considered in this complex case of respiratory compromise. None of the ECD probes or drive stuns appears to incapacitate the decedent, although he does reach and pull for the wires indicating likely pain or discomfort. This pain, or at least discomfort from the ECDs, would likely lead to an increase in adrenaline and stress in the already stimulated decedent. For these reasons, the ECD shocks are likely a contributing factor in this death with a complex combination of factors.

Although there is no evidence of intent to kill the decedent on the video, it seems that the law enforcement arrest was the intervening factor that led to the death (i.e. death by another). Therefore, for medicolegal purposes such as the death certificate, the manner of death should be classified as a homicide.

Case 1:18-cv-00978-DDD-JPM   Document 19-1   Filed 06/25/19   Page 13 of 17 PageID #: 250



Frank, Armando
294-17AV, 10/23/17

NME: _____






JCG FORM #2449-1 (8/07)



**NMS Labs**
3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900  Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, F-ABFT, DABCC-TC, Laboratory Director

**CONFIDENTIAL**

## Toxicology Report

Report Issued   11/02/2017 15:23

To:   10592
Louisiana Forensic Center, LLC
Attn: Roy Provost
PO Box 1320
Broussard, LA  70518

Patient Name    FRANK, ARMANDO
Patient ID      294-17AV
Chain           17334545
Age Not Given   DOB Not Given
Gender          Male
Workorder       17334545

Page 1 of 3

### Positive Findings:

| Compound | Result | Units | Matrix Source |
|---|---|---|---|
| Caffeine | Positive | mcg/mL | 001 - Blood |

See Detailed Findings section for additional information

### Testing Requested:

| Analysis Code | Description |
|---|---|
| 8042B | Postmortem, Expanded w/Vitreous Alcohol Confirmation, Blood (Forensic) |

### Specimens Received:

| ID | Tube/Container | Volume/Mass | Collection Date/Time | Matrix Source | Miscellaneous Information |
|---|---|---|---|---|---|
| 001 | Gray Top Tube | 7.5 mL | Not Given | Blood | |
| 002 | Gray Top Tube | 6.75 mL | Not Given | Blood | |
| 003 | Tan vial | 0.75 mL | Not Given | Vitreous Fluid | |
| 004 | Blue Vial | 6.5 mL | Not Given | Urine | |
| 005 | White Plastic Container | 30 mL | Not Given | Gastric Fluid | THICK BROWN FLUID WITH BITS, pH=2 |

All sample volumes/weights are approximations.
Specimens received on 10/27/2017.



**CONFIDENTIAL**

Workorder: 17334545
Chain: 17334545
Patient ID: 294-17AV

Page 2 of 3

## Detailed Findings:

| Analysis and Comments | Result | Units | Rpt. Limit | Specimen Source | Analysis By |
|---|---|---|---|---|---|
| Caffeine | Positive | mcg/mL | 0.20 | 001 - Blood | LC/TOF-MS |

Other than the above findings, examination of the specimen(s) submitted did not reveal any positive findings of toxicological significance by procedures outlined in the accompanying Analysis Summary.

## Reference Comments:

1. Caffeine (No-Doz) - Blood:

   Caffeine is a xanthine-derived central nervous system stimulant. It also produces diuresis and cardiac and respiratory stimulation. It can be readily found in such items as coffee, tea, soft drinks and chocolate. As a reference, a typical cup of coffee or tea contains between 40 to 100 mg caffeine.

   The reported qualitative result for this substance was based upon a single analysis only. If confirmation testing is required please contact the laboratory.

Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded one (1) year from the date of this report; and generated data will be discarded five (5) years from the date the analyses were performed.

Workorder 17334545 was electronically signed on 11/02/2017 14:32 by:

Michael E. Lamb, M.S.F.S.
Certifying Scientist

## Analysis Summary and Reporting Limits:

All of the following tests were performed for this case. For each test, the compounds listed were included in the scope. The Reporting Limit listed for each compound represents the lowest concentration of the compound that will be reported as being positive. If the compound is listed as None Detected, it is not present above the Reporting Limit. Please refer to the Positive Findings section of the report for those compounds that were identified as being present.

Acode 8042B - Postmortem, Expanded w/Vitreous Alcohol Confirmation, Blood (Forensic)

-Analysis by Enzyme-Linked Immunosorbent Assay (ELISA) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Barbiturates | 0.040 mcg/mL | Salicylates | 120 mcg/mL |
| Cannabinoids | 10 ng/mL | | |

-Analysis by Headspace Gas Chromatography (GC) for:

| Compound | Rpt. Limit | Compound | Rpt. Limit |
|---|---|---|---|
| Acetone | 5.0 mg/dL | Isopropanol | 5.0 mg/dL |
| Ethanol | 10 mg/dL | Methanol | 5.0 mg/dL |



| | | |
|---|---|---|
| **CONFIDENTIAL** | Workorder | 17334545 |
| | Chain | 17334545 |
| | Patient ID | 294-17AV |

Page 3 of 3

**Analysis Summary and Reporting Limits:**

-Analysis by High Performance Liquid Chromatography/Time of Flight-Mass Spectrometry (LC/TOF-MS) for: The following is a general list of compound classes included in this screen. The detection of any specific analyte is concentration-dependent. Note, not all known analytes in each specified compound class are included. Some specific analytes outside these classes are also included. For a detailed list of all analytes and reporting limits, please contact NMS Labs.

Amphetamines, Anticonvulsants, Antidepressants, Antihistamines, Antipsychotic Agents, Benzodiazepines, CNS Stimulants, Cocaine and Metabolites, Hallucinogens, Hypnosedatives, Hypoglycemics, Muscle Relaxants, Non-Steroidal Anti-Inflammatory Agents, Opiates and Opioids.

NMS v.18.0