**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

---

**DON FRANK, *ET AL.*** **CASE NO. 18-cv-978**

**-vs-** **JUDGE DRELL**

**KENNETH PARNELL, *ET AL.*** **MAGISTRATE JUDGE PEREZ-MONTES**

---

MEMORANDUM ORDER

Before the court is a motion entitled "Second Daubert Motion and/or Motion in Limine"[1] (Doc. 145) filed by Former Sheriff Doug Anderson, Brandon Spillman, and Alexander Daniel ("Defendants"). Defendants seek to exclude certain opinions of Charles P. Stephenson ("Stephenson") including the following:

1) Frank's identity, behavior patterns, place of residence and history of mental instability were known to the Sheriff's Office;

2) Frank's identity, behavior patterns and place of residence were known to the Police Department;

3) When Daniel initially approached Frank and asked if he was a veteran this showed Daniel's past association and knowledge of Frank;

4) Spillman and Daniel unnecessarily escalated "the totality of the circumstances of actions" that occurred during this incident by making no attempt to deal with Frank's passive, non-compliant behavior through fundamental de-escalation techniques;

5) Spillman and Daniel's use of force during the incident was "objectively unreasonable" and the root cause of Frank changing from a passive, non-compliant individual to an individual using non-violent passive resistance to protect himself;

---

[1] Both scientific and nonscientific expert testimony are subject to the framework established Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579 (1003). Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

6) No "exigent need" existed to accelerate the arrest of Frank from the non-congested back parking lot of the Walmart;

7) Daniel's explanation of the "exigent need" to arrest Frank because Frank looked at a key and the tractor ignition and Daniel was afraid Frank would start the tractor, attempt to drive away and endanger other civilians is not consistent with Frank's passive-noncompliant behavior;

8) There was ample time to de-escalate the situation by retrieving a copy of the warrant, then showing it to Frank and advising Frank exactly what he was being arrested for;

9) Daniel escalated the incident by not telling Frank what he was being arrested for and/or making any attempt to obtain a copy of the warrant to show Frank;

10) Daniel's initial decision to use his Taser on Frank, a passive non-compliant individual, was not consistent with the Avoyelles Parish Sheriff's Office Use of Force policy and procedure;

11) Daniel's repeated deployment of his Taser against Frank was not in compliance with recommended policies and procedures of the International Association of the Chiefs of Police ("IACP") as it pertains to Taser use;

12) Daniel's deployment of Taser probes into Frank's chest, when Frank's lower extremities were available, was not compliant with Taser and IACP Best Practices;

13) Daniel's repeated activation of his Taser when he did not perceive any reaction from Frank and failing to closely monitor Frank's physical condition was an "objectively unreasonable excessive use of force" and in direct contradiction to Taser and IACP recommended policies and procedures on the use of a Taser;

14) Daniel's repeated activation of his Taser is consistent with repeated Taser applications identified during Frank's autopsy as being one of the contributing factors that contributed to his death and Frank's death being classified as a homicide;

15) Daniel's failure to monitor Frank's breathing and physical reaction subsequent to subjecting Frank to repeated Taser discharge, is in direct contradiction to Taser and IACP policies and procedures;

16) Daniel's actions exhibited a complete abdication of his supervisory

responsibilities which contributed to the loss of overall supervisory control over the totality of the incident. This in turn contributed dramatically to an escalation of the incident and "objectively unreasonable" use of force against Frank;

17) Daniel lacked a fundamental understanding of de-escalation techniques;

18) Spillman's use of a lethal choke hold against a passive non-compliant Frank was "objectively unreasonable" and an excessive use of force;

19) Spillman's use of lethal force against Frank when he applied a "rear strangle choke" on Frank while screaming obscenities was an "objectively unreasonable" use of force and consistent with his individual loss of situational control;

20) Spillman's use of a lethal choke hold on Frank was "objectively unreasonable", excessive and consistent with his desire to punish Frank for his non-compliant behavior in regard to Spillman's commands;

21) Spillman's acknowledgment that he applied a "strangle hold" on Frank but did not apply any pressure, is inconsistent with what is shown on the body cam video and recorded in the autopsy;

22) There was a complete loss of situational control among additional officers that responded to the scene which resulted in individual acts of "objectively unreasonable" force being directed toward Frank;

23) Lifting Frank by his arms, with his hands handcuffed behind his back, because the officers thought he was "dead weighting", was a deliberate, painful, punitive and "objectively unreasonable" use of force; and

24) Placing Frank in the back seat of a police car, face down, with his hands handcuffed behind him, then leaving him unattended was an "objectively unreasonable" use of force and not consistent with the APSO policies and procedures.

(Doc. 145). For the following reasons the motion is GRANTED IN PART and DENIED IN PART.

Both the Federal Rules of Evidence and case law govern whether testimony of an expert witness is admissible. Federal Rule of Evidence 702 allows an expert to testify if: "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the

testimony is the product of reliable principles and methods; and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Id. Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579 (1003) provides the framework by which the court determines whether the testimony is reliable and relevant. See also Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

Defendants first address the report of Stephenson. They contend that Stephenson's description of the incident should be excluded because it is nothing more than a summary of the video which the jury is more than capable of watching and understanding without Stephenson's assistance. We agree. Stephenson cannot provide either a narrative of the video or his own credibility determinations or legal conclusions based on his review of the video. Accordingly, this portion of the report should be excluded.

We next address the Defendants' request to exclude the video evidence obtained from Honea, Firmin, and Paige. To the extent the request is one to prevent Stephenson from relying on these videos, the request is denied. Whether the videos are in fact hearsay evidence is of no moment when deciding whether an expert witness may review them in forming his opinions. Fed.R.Evid. 703. However, this does mean that the videos may be admitted as evidence for the jury to consider. Unfortunately, we cannot determine at this time whether the videos are in fact hearsay as we do not know who Honea, Firmin and Paige are, nor have the parties provided copies or pointed to their existence in the record so the court might review them. Accordingly, at this time, the request to exclude the videos as evidence is denied.

As to the numbered opinions set forth above, we note that there is no dispute that opinions 1, 2, and 3 must be excluded from evidence as they are factual statements and not opinions.

At this time, the court finds that Stephenson, if otherwise qualified, could render opinions on police procedures, law enforcement training, departmental policies, de-escalation techniques, supervisory practices, Taser practices, restraint practices, and whether certain conduct was consistent or inconsistent with identified professional standards or policies. He may refer to Internation Association of the Chiefs of Police policies and procedures to explain recognized law enforcement practices, but he cannot testify that violation of these procedures necessarily results in a constitutional violation. In fact, Stephenson may not render any opinions that assert legal conclusions. His statements that police conduct was "objectively unreasonable" that that used "excessive force" or "grossly excessive" force, their actions were "punitive", etc. will not be allowed. Nor may he testify to the credibility of any witness or speculate as to an officer's intent, motive, or desire to punish Frank. Such testimony is not only prohibited at trial, but it should be excluded from any report. As always, Defendants may challenge Stephenson's assumptions and conclusions via cross-examination and the presentation of evidence.

We also agree with Defendants that Stephenson's testimony regarding medical-causation and effects of Taser deployment is beyond his qualifications. Stephenson is not a medical expert, and such statements exceed any expertise he possesses on use of Tasers.

Based on the foregoing, it is hereby

ORDERED that the motion is GRANTED IN PART. The opinions found at 1, 2, and 3 are excluded as the parties agree they are factual findings and not opinions. Stephenson is precluded from offering legal conclusions and opinions which invade the province of the jury as set forth above. Stephenson's report is not admissible per set but may be used in cross-examination, less and except the foregoing It is further

ORDERED that the motion is DENIED IN PART. Stephens may offer otherwise admissible police-practices testimony, subject to appropriate objections and cross-examination at trial.

THUS DONE AND SIGNED at Alexandria, Louisiana this 23RD day of September 2026.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT